UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



*********************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 08-30101-KES |
| Plaintiff, | * | |
| | * | REPORT AND RECOMMENDATION |
| -vs- | * | FOR DISPOSITION OF DEFENDANT'S |
| | * | MOTION TO DISMISS INDICTMENT |
| HAROLD GEORGE VOICE, | * | |
| Defendant. | * | |

*********************************************************************************

Defendant, Harold George Voice ("Voice"), has filed a Motion to Dismiss Indictment and a Memorandum in support thereof. Plaintiff, United States of America ("Government"), has filed a Response to the dismissal Motion. Subsequently, an evidentiary hearing was held before this Court on Voice's Motion. Because the Motion is a dispositive one, the Court is only authorized to determine the same on a report and recommendation basis. Pursuant to 28 U.S.C. §636(b)(1), the Court does now make and propose the following report and recommendation for disposition of the Motion.

I.

Voice is charged with one count of Failure to Register as a Sex Offender. The alleged violation is said to have occurred between August 5, 2008 and October 2, 2008, in this state and district. According to the Indictment, Voice is required to register, under the Sex Offender Registration and Notification Act ("SORNA") as a sex offender, by reason of a conviction under federal law, and he knowingly failed to register and update his registration, in violation of 18 U.S.C. §2250(a).

II.

In the summer of 2008, Voice was residing in Sioux Falls, Minnehaha County, South Dakota and was under federal supervision. He had previously registered as a sex offender with the State of South Dakota, and was required to register bi-annually in January and July of each year under state law. He re-registered on July 7, 2008, and was required to next register in January, 2009.

On October 2, 2008, Voice was seen walking in the approximate vicinity of the BIA agency building in Fort Thompson, South Dakota, on the Crow Creek Indian Reservation, and was arrested on a federal warrant issued for alleged violations of his supervised release. Witnesses reported that Voice had been sleeping behind an abandoned bathhouse building approximately two tenths of a mile from the location where he had been stopped and arrested. Voice had not registered with or notified the appropriate law enforcement agency of his relocation.

On October 22, 2008, Voice was indicted and thereafter pled not guilty to the charge. He later filed a Motion to Dismiss the Indictment claiming that SORNA violates the Ex Post Facto, Due Process and Commerce Clauses of the United States Constitution and the Non-Delegation Doctrine. The Government resisted the Motion, asserting that the "issues" raised in it had all been considered and rejected by the Eighth Circuit in United States v. May, 535 F.3d 912 (8th Cir.), petition for cert. filed (U.S. Dec. 30, 2008) (No. 08-7997). Each of Voice's claims will be addressed below.

III.

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides for consideration, prior to trial, of "any defense, objection, or request that the court can determine without a trial of the general issue." To withstand a motion to dismiss, an indictment must allege that the defendant committed acts which, if proven, would constitute a violation of the law under which he has been charged. United States v. Polychron, 841 F.2d 833, 834 (8th Cir.), cert denied, 488 U.S. 851 (1988). If the acts alleged in the indictment do not constitute a criminal offense, then the indictment should be dismissed. See e.g. United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984).

In reviewing the sufficiency of an indictment, a court must determine whether the indictment includes the elements of the offense, provides adequate notice of the charge, and enables the defendant to plead double jeopardy as a bar to further prosecution. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002), cert. denied, 537 U.S. 1134 (2003). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." Hernandez, 299 F.3d at 992.

"An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." United States v. Sampson, 371 U.S. 75, 78-79 (1962). "Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency." United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994). However, it is permissible, and even desirable in certain circumstances, for a court to consider evidence in connection with a pretrial motion to dismiss, particularly where the operative facts are

undisputed and not objected to, in order to ascertain whether the elements of the criminal charge can be established. Id. at 1087-88; United States v. Brown, 925 F.2d 1301, 1304 (10th Cir. 1991).

Due deference to the decisions of another branch of government demands that a congressional enactment be invalidated only upon a "plain showing" that Congress exceeded its constitutional bounds. United States v. Morrison, 529 U.S. 598, 607 (2000). It is with this presumption of constitutionality in mind that the Court must review Voice's claims. Id.

IV.

SORNA was enacted on July 27, 2006, as a component of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006). SORNA establishes "a comprehensive national system" for the registration of sex offenders. 42 U.S.C. §16901. Under this national system, each jurisdiction is required to maintain "a jurisdiction-wide sex offender registry" that conforms to the requirements of SORNA. 42 U.S.C. §§16911(10), 16912(a).

Under SORNA, "an individual who is convicted of a sex offense" must "register and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. §§16911(1), 16913(a). A sex offender must initially register in the jurisdiction in which he was convicted, §16913(a), and within three days after any change of "name, residence, employment or student status" the offender must appear in person and at least one jurisdiction involved and notify that jurisdiction of all changes in the information which must be reported to the sex offender registry, §16913(c).

In addition to mandating registration, SORNA criminalizes the failure to register. In particular, SORNA makes it a crime for any sex offender who "is required to register" and who "knowingly fails to register or update a registration." §2250(a).

Congress delegated the authority to promulgate regulations regarding the scope and breadth of SORNA to the United States Attorney General. §16913(d). On February 28, 2007, the Attorney General issued an interim rule clarifying that SORNA's requirements were applicable "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]. 28 C.F.R. §72.3 (2007).

SORNA also requires jurisdictions to conform their sex offender registries to federal requirements by July 27, 2009 or risk losing part of their federal funding. 42 U.S.C. §§16924(a), 16925(a). The jurisdictions relevant to the instant case, namely, the State of South Dakota and the Crow Creek Sioux Tribe, have not yet complied with or fully implemented these requirements.

V.

Voice claims that his prosecution under SORNA violates the Ex Post Fact Clause[1] which forbids Congress from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (footnotes and citations omitted). In support of his claim, Voice asserts that (1) he is now being punished for conduct that occurred in 1998, which did not become a crime until 2006, and (2) the only laws in effect at the time of his offense were South Dakota state statutes, SDCL 22-22-30 et. seq., and the Jacob Wetterling

---

[1] See U.S. Const. art. I, §9, cl. 3.

Act, Pub. L. No. 103-322, 108 Stat. 2038 (Sept. 13, 1994) (codified as 42 U.S.C. §14071), which carried lesser penalties than SORNA.

Contrary to Voice's assertions, the Eighth Circuit's reasoning and ultimate holding in May, 535 F.3d at 919-20 made clear that neither SORNA's registration requirements nor the criminal penalties attached to non-compliance with §2250 violate the Ex Post Facto Clause. United States v. Hinckley, 550 F.3d 926, 936 (10th Cir. 2008), petition for cert. filed (U.S. Feb. 9, 2009) (No. 08-8696); see also United States v. Lawrance, 548 F.3d 1329, 1332-34 (10th Cir. 2008) (prosecution under SORNA's failure to register provisions did not retroactively increase the punishment for the defendant's past sex offenses). The Court finds and concludes that "the legislative intent expressed in SORNA's preamble and SORNA's primary effect satisfy the requirements of the Ex Post Facto Clause." Hinckley, 550 F.3d at 936; see also May, 535 F.3d at 919-20.

A.

Voice contends that his indictment for failure to register under §2250 punishes him for acts committed prior to SORNA's enactment and therefore violates the Ex Post Facto Clause. SORNA, however, does not impose additional punishment for a predicate sex offense. Instead, SORNA works prospectively, creating a new punishment for a new offense, to wit, failing to register as a sex offender after July 27, 2006. United States v. Shenandoah, 572 F.Supp.2d 566, 573-74 (M.D.Pa. 2008) (citations omitted).

In this case, Voice is charged with failing to register between August 5, 2008 and October 2, 2008. This time period is well after SORNA's effective date and after the regulations promulgated by the Attorney General clarifying SORNA's applicability to

previously convicted sex offenders. This being the case, applying SORNA's criminal provisions to Voice's alleged criminal conduct does not implicate ex post facto strictures. United States v. Dumont, No. 08-11187, 2009 WL 161864 at **2-3 (11th Cir. Jan. 26, 2009); United States v. Begay, No. CR08-1203-PHX-DGC, 2009 WL 465026 at *6 (D. Ariz. Feb. 24, 2009); United States v. Watchman, No. CR08-1202-PHX-DGC, 2009 WL 464995 at *6 (D. Ariz. Feb. 24, 2009).

B.

Voice also maintains that SORNA retroactively increases his punishment and by doing so violates the Ex Post Facto Clause. Yet, as the court in May observed, if a defendant is not even subject to the interim regulations promulgated by the Attorney General, then there is no Ex Post Facto Clause problem. May, 535 F.3d at 919. And, to the extent that Voice challenges the overall applicability of SORNA, under the ex post facto framework of Smith v. Doe, 538 U.S. 84 (2003), his challenge must likewise fail. May, 535 F.3d at 919-20.

In analyzing a claim that the Ex Post Facto Clause has been violated, a court must determine whether the statute is civil or criminal in nature. Id. at 919 (citing Kansas v. Hendricks, 521 U.S. 346, 361 (1997)). This analysis requires an inquiry into legislative intent, including the manner the statute was codified and enforced, and its effect. Smith, 538 U.S. at 93-106.

Congress' stated purpose and intent, when enacting SORNA, was to create a civil and non-punitive regulatory scheme. §16901; see also 72 Fed. Reg. 8,894, 8,896 (Feb. 28, 2007). This scheme is not so punitive that it negates Congress' express desire to create a civil remedy and not a criminal penalty. May, 535 F.3d at 920. As relevant here, the only punishment that

7

can arise under SORNA comes from a violation of §2250, which punishes a convicted sex offender under federal law who knowingly fails to register and update his registration as required. §2250(a)(1), (2)(A), (3). Congress clearly intended for SORNA to apply to persons convicted before July 27, 2006. In fact, SORNA defines a sex offender as "an individual who was convicted of a sex offense." §16911(1) (emphasis added). If SORNA did not apply to someone already convicted of a sex offense, Congress' stated purpose of establishing a "comprehensive national system" for the registration of sex offenders would have been thwarted. May, 535 F.3d at 920.

Section 2250 punishes Voice for failing to register and keep his registration updated, not for being previously convicted of a sex crime. Prosecuting him, like the defendant in May, for violating this statute "is not retrospective and does not violate the Ex Post Facto Clause." Id. at 920.

VI.

Voice next raises three distinct due process challenges to SORNA. First, he asserts that it is a violation of due process to punish him for failing to register when he was unable to do so. Second, he contends that he had no duty to register because he was not notified of SORNA's requirements. Third, he argues that SORNA is ambiguous and should be struck down on this basis. For the reasons discussed below, none of these challenges warrant dismissal of the Indictment.

A.

Voice initially claims that he was not able to comply with SORNA because it had not yet been implemented by the Crow Creek Tribe and that, as a result, punishing him for failing

8

to register under SORNA violates the Fifth Amendment's Due Process Clause.[2] The Court disagrees.

Section 16912 directs the Attorney General to "issue guidelines and regulations to interpret and implement" SORNA. In subsequent guidelines, the Attorney General plainly expressed that SORNA applies to sex offenders convicted of any predicate offense before SORNA's enactment. 73 Fed. Reg. 38,030, 38,046 (July 2, 2008).

Furthermore, §16913(d) grants the Attorney General the authority "to specify the applicability of [SORNA's] requirements . . . to sex offenders convicted before . . . its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the initial registration requirements]" (emphasis added). The Attorney General, in guidelines issued by him, then explicitly stated that "[t]he applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program." 72 Fed. Reg. 30,210, 30,212 (May 30, 2007) (emphasis added). The Attorney General, later on in the same regulations, reiterated that "SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs." Id. at 30,228.

---

[2]Voice also raises a "stand alone" claim that SORNA is not applicable to him because the Tribe has not yet implemented, as of February 12, 2009, a sexual offender registry, after electing, by tribal resolution, to carry out SORNA within its own jurisdiction and not consenting to the exercise of any state jurisdiction or cooperation. This claim will be addressed with, and as part of, the due process claim.

Beyond this, SORNA merely obligates a sex offender to notify the relevant "jurisdiction(s) of all changes in the information required for that offender in the sex offender registry." See §16913(c). While SORNA does impose additional requirements on jurisdictions to improve their registry systems, these requirements are separate and apart from those imposed on sex offenders. See §16913 (setting forth the registry requirements for sex offenders), §16912 (containing the registry requirements for jurisdictions). A jurisdiction's failure to implement and/or update its registration system to conform with SORNA's requirements does not relieve the sex offender of his independent duty to register all information that is required by then existing state law. Shenandoah, 572 F.Supp.2d at 578-79 (citations omitted). Every district court to confront the issue has held that a defendant could comply with SORNA even when the jurisdiction in which the defendant was required to register had not yet implemented the federal law. Shenandoah, 572 F.Supp.2d at 579; see also United States v. Contreras, No. EP-08-CR-1696-PRM, 2008 WL 5272491 at *6 (W.D. Tex. Dec. 18, 2008) (Texas); United States v. Benton, No. 2:08-CR-156, 2008 WL 5273971 at *6 (S.D. Ohio Dec. 16, 2008) (Ohio); United States v. Keleher, No. 1:07-cr-00332-OWW, 2008 WL 5054116 at *6 (E.D. Cal. Nov. 19, 2008) (California); United States v. Morris, Crim. No. 08-0142, 2008 WL 5249231 at **3-4 (W.D. Louisiana Nov. 14, 2008) (Louisiana); United States v. Crum, No. CR08-255RSL, 2008 WL 4542408 at **2-3 (W.D. Wash. 2008, Oct. 8, 2008) (Washington); United States v. Stevens, 578 F.Supp.2d 172, 179-82 (D. Maine 2008) (Maine and Rhode Island); United States v. Senogles, 570 F.Supp.2d 1134, 1157-58 (D. Minn. 2008) (Minnesota). And, at least one appeals court that has addressed the issue, has upheld this view. Hinckley, 550 F.3d at 939 (Oklahoma). The fact that the case at hand involves an Indian tribe's failure to implement SORNA does not change

the result. Begay, 2009 WL 465026 at **2-4, 2009 WL 464995 at **2-4; Watchman, 2009 WL 464995 at **2-4.

While the Crow Creek Tribe's sex offender registration program is not yet up and running and as such does not meet SORNA's requirements, Voice is not being prosecuted for providing less information than SORNA dictates. Rather, he is charged with outright failure to register and/or update his registration. Voice knew that he had an obligation to register as a sex offender because he did so previously with one or more state agencies. He thus had the ability to comply with SORNA and will not be permitted to use the Tribe's failure to implement SORNA's mandates to excuse or vitiate his alleged non-compliant behavior. Begay, 2009 WL 465026 at *5; Watchman, 2009 WL 464995 at *5.

B.

Voice next argues that he cannot be prosecuted under SORNA because he was not notified of its registration requirements. This argument is likewise unavailing.

Generally, "ignorance of the law" does not absolve one of criminal responsibility. Lambert v. California, 355 U.S. 225, 228 (1957). A narrow exception exists to this maxim when the defendant's conduct is "wholly passive" and does not alert him to the fact that he is engaging in criminal activity. Id.

In Lambert, the Supreme Court considered whether a defendant, who had no actual knowledge of a city ordinance that made it unlawful for a felon to be or remain in the city for more than five days without registering, could be convicted for failing to register pursuant to the ordinance. 355 U.S. at 226. The Court held that the ordinance violated due process because the defendant had no actual knowledge of the registration requirement and because the

circumstances were not such that he would have been likely to inquire as to the necessity of registration. Id. at 229. The Court, however, recognized that due process "does not require that a defendant have actual knowledge of a duty to register where the facts demonstrate 'proof of the probability'" that he had such knowledge. Id. at 229-30. In other words, "constructive knowledge of an affirmative duty to register is enough to satisfy due process requirements." Id.

SORNA does seem to criminalize the same type of "wholly passive" conduct that Lambert proscribed. Even so, an overwhelming majority of courts have held that a defendant's knowledge of his obligation to register as a sex offender pursuant to state law provides sufficient proof of the probability that he was aware of his obligation to register under SORNA. May, 535 F.3d at 921; Hinckley, 550 F.3d at 938; United States v. Pendleton, Criminal Action No. 08-59-GMS, 2009 WL 320546 at *8 (D.Del. Feb. 10, 2009); Shenandoah, 572 F.Supp.2d at 580.

Here, Voice's successful compliance with state requirements provides evidence that he understood his responsibility to register as a sex offender and was able to fulfill that responsibility. Shenandoah, 572 F.Supp.2d at 580-81. So too does the fact that Voice acknowledged being notified, in his July 7, 2008 registration form, that he had a duty to advise law enforcement agencies of any change of address and of his relocation and that he could be charged with a state offense if he failed to do this. Id. at 581; see also Begay, 2009 WL 465026 at *4; Watchman, 2009 WL 464995 at *4. Courts have determined that a defendant can violate SORNA if he fails to register or update a SORNA imposed registration obligation or a parallel one imposed by some other law. Id.; see also Hinckley, 550 F.3d at 939.

The Court finds and concludes that Voice had at least constructive notice of his duty to register pursuant to SORNA. His status as a sex offender should have alerted him to his responsibility to register and to update his registration. Given his existing knowledge of state registration requirements, his failure to register appears to be the result of active, rather than "wholly passive", conduct. Voice, however, is charged with not having registered or updated his registration, the requirements of which he had ample notice of. His argument, that he did not comply with SORNA because he lacked notice of its provisions, must, per force, fail. Begay, 2009 WL 465026 at *5; Watchman, 2009 WL 464995 at *5.

C.

Voice seeks to strike down SORNA as being unconstitutional because it is ambiguous. Specifically, he maintains that an ambiguity exists between the notification and verification provisions found in §16913(c) and 42 U.S.C. §16916. The former commands that a sex offender, not later than three business days after each change of name, residence, employment or student status, appear in person in at least the jurisdiction where he resides, is an employee or a student, and inform that jurisdiction of all changes in the information required for him in the sex offender registry. The latter directs that such an offender appear in person, and allow the jurisdiction to take a current photograph and verify information in each registry in which he is required to be registered each year, six months or three months, depending upon the tier level he is classified as.

There is nothing ambiguous about these statutes or what they require an offender to do. The disclosure edicts found in §16913(c) are limited to those instances where there is a change in the offender's status, whether by way of a new or different name, home, job or school

situation. By contrast, the verification proviso contained in §16916 only applies to certain defined intervals, based on the offender's classification level. The offender is required to provide information every time there is a change in his status and, at whatever time intervals his tier level dictates.

In Voice's case, he was advised in writing, on July 7, 2008, of the exact months (January 2009 and July 2009) he was required to re-register (i.e., provide verifying information for the registry). At the same time, he was advised that he was obligated to provide written notification of any change of address and relocation within five days of the same. Although not fully in accord with SORNA's requirements, these advisements were unequivocal and left no room for confusion. Voice knew or should have known that, as a sex offender, he was required to notify a law enforcement agency of any change of address or of his relocation within five days after the same or risk being subjected to criminal penalties. There is nothing ambiguous about this and nothing that comes even remotely close to a due process violation.

VII.

Voice further claims that Congress violated the Non-Delegation Doctrine by authorizing the Attorney General to determine SORNA's retroactivity. He lacks standing, however, to raise this claim. May, 535 F.3d at 920-21; see also Hinckley, 550 F.3d at 939 (§16913(d) "does not apply to offenders who are required to and have already initially registered and [the defendant] therefore lacks standing to bring this claim"); United States v. Summers, No. 8:08CR256, 2008 WL 5255816 at *2 (D. Neb. Dec. 16, 2008) (the defendant "lacks standing to raise a challenge to the Attorney General's authority delegated by Congress to apply SORNA to persons

14

convicted before July 27, 2006 because [he] was able to register before SORNA's enactment"). But even assuming otherwise, arguendo, he cannot prevail on the merits of his claim.

Under the Constitution, "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, §1. It is from this language that the Non-Delegation Doctrine has been derived: Congress may not constitutionally delegate its legislative power to another branch of government. Touby v. United States, 500 U.S. 160, 165 (1991); see also United States v. Garfinkel, 29 F.3d 451, 457 (8th Cir. 1994). The Doctrine, however, "does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches." Mistretta v. United States, 488 U.S. 361, 372 (1989). So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." Touby, 500 U.S. at 165 (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)). In applying this "intelligible principle" test, the Supreme Court has afforded Congress wide latitude in delegating its powers and has upheld every congressional delegation of power that the Court has confronted since 1935. Mistretta, 488 U.S. at 373-74. The Court has deemed it "constitutionally sufficient" if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Id. at 373-73 (quoting American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946)).

When enacting SORNA, Congress delegated to the Attorney General the authority to specify the applicability of SORNA's requirements to sex offenders convicted before its enactment and to prescribe rules for other sex offenders who are unable to comply with the initial registration requirements. Every court that has passed on the merits of the issue has held

that this delegation of authority was not unlawful. See e.g. Begay, 2009 WL 465026 at *5; Keleher, 2008 WL 5054116 at **12-15; Stevens, 578 F.Supp.2d at 182-84; United States v. Vasquez, 576 F.Supp.2d 928, 939-40 (N.D. Ill. 2008); Shenandoah, 572 F.Supp.2d at 586-89; United States v. Van Buren, No. 3:08-CR-198, 2008 WL 3414012 at *15 (N.D.N.Y. Aug. 8, 2008); Senogles, 570 F.Supp.2d at 1150-51.

As one district court observed:

> [SORNA's] delegation was proper since Congress established a clear policy of protecting the public from sex offenders and offenders against children, was specific that the delegation was to the Attorney General, and established boundaries of the delegation by limiting the applicability of the Attorney General's rules to those convicted before the enactment of SORNA and to those who were unable to comply with the initial registration.

United States v. Natividad-Garcia, 560 F.Supp.2d 561, 567-68 (W.D. Tex. 2008). In view of the Attorney General's prior experience with the Jacob Wetterling Act, the clear intent of Congress to encompass as many sex offenders as possible within SORNA's purview, and the specific provisions of §16913(d), the Court finds and concludes that Congress provided the Attorney General with an "intelligible principle" to use in crafting the required rules and as such, did not violate the Non-Delegation Doctrine of the Constitution.

VIII.

Voice lastly claims that SORNA, as applied to him, violates the Commerce Clause.[3] He argues that he is being charged with, and could be convicted and punished for, intrastate registration activity that does not substantially affect interstate commerce. Voice's claim, however, is foreclosed by the Eighth Circuit's recent decisions in United States v. Howell, 552

---

[3] See Under this Clause, Congress is authorized "[t]o regulate Commerce with Foreign Nations, and among the several states, and with the Indian Tribes[.]" U.S. Const. art I, §8, cl. 3.

F.3d 709, 713-17 (8th Cir. 2009) and May, 535 F.3d at 921-22 and by other decisions from district courts, see United States v. Thompson, No. CR-08-205-B-W, 2009 WL 226050 at *2 (D. Me. Jan. 29, 2009); Senogles, 570 F.Supp.2d at 1147. But even if these decisions are distinguishable and the claim somehow survives, it nonetheless does not provide Voice with a basis for relief.

The Supreme Court has enumerated "three general categories of regulation which Congress is authorized to engage under its commerce power." Gonzales v. Raich, 545 U.S. 1, 16 (2005). "First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third, Congress has the power to regulate activities that substantially affect interstate commerce." Id. at 16-17; see also United States v. Lopez, 514 U.S. 549, 558-59 (1995).

Congress also has the authority "[t]o make all Laws which shall be necessary and proper" for the accomplishment of its commerce power. U.S. Const. art. I, §8, cl. 18. "[A] law does not have to be undeniably necessary to be proper, Howell, 552 F.3d at 714 (citing McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 413 (1819)), so long as it is "a rational and appropriate means to further Congress's regulation of interstate commerce," Howell, 552 F.3d at 714 (citing United States v. Darby, 312 U.S. 100, 121 (1941)).

Congress' regulatory authority under the Commerce Clause can be extended to wholly intrastate activity. The Supreme Court long ago stated that Congress can regulate intrastate economic activities if the same have a substantial effect on interstate commerce. See Wickard v. Filburn, 317 U.S. 111, 125 (1942). The Court has also recognized that Congress may

regulate even non-economic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. Lopez, 514 U.S. at 561.

Under §2250(a)(2), only those sex offenders who were convicted of a federal sex offense or who travel in interstate or foreign commerce, or enter, leave or reside in Indian country are subject to SORNA's registration requirements and to prosecution for violating them. Thus, a South Dakota resident who has been convicted of a qualifying state sex offense but does not leave the state is not subject to SORNA if he fails to register. Instead, he can only be charged and punished under South Dakota law for failing to register as a sex offender. His purely intrastate status makes him out of the reach of SORNA.

By contrast, Voice has an interstate nexus which brings him within the grasp of SORNA. First, he was previously convicted of a federal sex offense, in Indian country. See §2250(a)(2)(A). Second, the factual information of record indicates that Voice was living in Sioux Falls when he re-registered on July 7, 2008, and then entered, and may well have been residing on, the Crow Creek Reservation at or prior to the time he was arrested, nearly three months later. See §2250(a)(2)(B); see also United States v. Dixon, 551 F.3d 578, 583 (7th Cir. 2008) ("The reference to "Indian country" is a tipoff . . . [that] is designed to establish the constitutional predicate for the statute. . . ."). Both of these facts, have federal and/or interstate components to them, which make it "necessary and proper" for Congress, through the use of its Commerce Clause power, to extend its regulatory arm to Voice vis-a-vis SORNA and §2250. Voice has no cause to complain about SORNA being applied to him in view of his circumstances and in particular, the inter-connections between himself, federal law and the Crow Creek Reservation.

IX.

Based on the foregoing discussion and in accordance with §636(b)(1), the Court hereby RECOMMENDS that Voice's Motion to Dismiss Indictment, found at Docket No. 15, be denied in all respects.

Dated this 5th day of March, 2009, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Deputy
(SEAL)

NOTICE

**Failure to file written objections to the within and foregoing Report and Recommendation for Disposition of Defendant's Motion to Dismiss Indictment within ten (10) days from the date of service thereof shall bar an aggrieved party from attacking the same before the assigned United States District Judge. See 28 U.S.C. § 636(b)(1).**