UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-30101-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING REPORT |
| vs. | ) | AND RECOMMENDATION |
| | ) | ON DEFENDANT'S MOTION |
| HAROLD GEORGE VOICE, | ) | TO DISMISS INDICTMENT |
| | ) | |
| Defendant. | ) | |

Defendant, Harold George Voice, is charged with one court of failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Docket 1. Voice moves to dismiss the indictment filed against him based upon the fact that the Sexual Offender Registration Notification Act (SORNA) is unconstitutional in several respects.

The court referred the motion to dismiss the indictment to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge recommends that this court deny Voice's motion to dismiss the indictment in all respects. Voice objects to several legal conclusions in the magistrate judge's report and recommendation. The government has not responded to Voice's objections.

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v.

Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see also Fed. R. Civ. P. 72(b). After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court adopts the report and recommendation as supplemented below.

## DISCUSSION

### I. Ex Post Facto Clause

The magistrate judge found that SORNA does not violate the Ex Post Facto clause of the United States Constitution.

#### A. Prospective Application

The magistrate judge found that SORNA works prospectively because it creates a new punishment for a new offense, which is failing to register as a sex offender after July 27, 2006. Voice objects to this finding, arguing that applying SORNA to him imposes punishment for an act that was not punishable at the time it was committed.

Voice is charged with failing to register between August 5, 2008, and October 2, 2008. This time period is after SORNA's effective date and after the

Attorney General's regulations were promulgated clarifying SORNA's applicability to previously convicted sex offenders. Under similar circumstances, in United States v. May, 535 F.3d 912, 919 (8th Cir. 2008), the Eighth Circuit determined that SORNA works prospectively and therefore does not violate the Ex Post Facto Clause. Pursuant to this precedent, the court finds that SORNA applies prospectively and does not violate the Ex Post Facto Clause.

### B. Increased Punishment

The magistrate judge further determined that SORNA did not retroactively increase Voice's punishment. Voice objects to this finding, contending that SORNA imposes additional punishment to the punishment he received when he was initially convicted of the sex offense in 1998. Voice argues that at the time of his 1998 underlying conviction, he was subject to a Class I misdemeanor penalty for failure to register pursuant to the Jacob Wetterling Act. SORNA increases that penalty to a federal felony that carries up to ten years in prison. Voice urges that this difference in penalties distinguishes his case from the May case.

In May, the Eighth Circuit did not need to address whether SORNA would violate the Ex Post Facto Clause if it subjected a defendant to higher penalties than the statutory scheme in place at the time the defendant committed the initial sex offense, because as a repeat offender, May was

already subject to a ten-year statutory maximum under the Lychen Act. Id. at 920, n.4.

The Tenth Circuit in United States v. Hinckley, 550 F.3d 926, 936 (10th Cir. 2008), however, did reach this issue and found that SORNA does not violate the Ex Post Facto Clause. Defendant had argued that the only laws in effect at the time of his offense were state statutes and the Jacob Wetterling Act, which carried lesser penalties than SORNA. In rejecting this argument, the Tenth Circuit adopted the rationale of May that SORNA is a civil retroactive registration scheme that relies on criminal penalties to further its civil intent and does not increase the punishment for acts committed prior to SORNA"s effective date. Id. at 938. Therefore, based upon the Eighth Circuit's rationale in May and the Tenth Circuit's decision in Hinckley, the court finds that SORNA does not violate the Ex Post Facto Clause because it did not increase the punishment of Voice for acts committed prior to SORNA's effective date.

**C.    Civil, Non-Punitive Regulatory Scheme**

The magistrate judge concluded that SORNA is a civil and non-punitive regulatory scheme. Voice objects to this finding, arguing that SORNA is a punitive statute based, in part, on the fact that it provides penalties for failure to comply with it. The Eighth Circuit has determined that SORNA is regulatory, not punitive, and as a result it does not violate the Ex Post Facto Clause. May, 535 F.3d at 919-920. Accordingly, Eighth Circuit precedent

4

requires this court to find that SORNA is not punitive in nature and thus does not violate the Ex Post Facto Clause.

## II. Due Process Clause

The magistrate judge also found that SORNA does not violate the Due Process Clause of the United States Constitution.

### A. Implementation of SORNA

The magistrate judge determined that Voice could comply with SORNA even if the Crow Creek Sioux Tribe has not implemented SORNA. Voice objects to this finding, contending that the Attorney General guideline should not be applicable to the Crow Creek Sioux Tribe, which has no sex offender registry program in existence. Additionally, Voice argues that Crow Creek Sioux Tribe's failure to implement SORNA excuses his alleged illegal activity. In sum, Voice emphasizes that because the Crow Creek Sioux Tribe does not have a sex offender registration program, he could not register with the Crow Creek Sioux Tribe in compliance with SORNA. Voice also points out that South Dakota has not adopted SORNA.

The parties have not cited controlling authority that directly addresses this issue. But, as indicated in the magistrate judge's opinion, there is a plethora of recent persuasive authority indicating that the failure of a state to implement or update its registration in accordance with SORNA does not relieve the sex offender of his duty to register all information that is required by

5

then existing state law.  See, e.g., Hinckley, 550 F.3d at 939 (determining that the fact that Oklahoma had not statutorily implemented SORNA did not provide an excuse for the defendant not to register because the defendant had knowledge of his duty to register under similar state and federal provision); United States v. Shenandoah, 572 F. Supp. 2d 566, 578 (M.D. Pa. 2008) (stating that "[a] state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register all information that is required by then-existing state law"); United States v. Contreras, 2008 WL 5272491, at *6 (W.D. Tex. Dec. 18, 2008) (stating that the court "rejects Defendant's argument that Texas's failure to implement SORNA gives rise to a due process violation); United States v. Benton, 2008 WL 5273971, at *6 (S.D. Ohio Dec. 16, 2008) (recognizing that "courts addressing this issue have overwhelmingly held that SORNA is effective and applicable prior to state implementation of SORNA requirements"); and United States v. Senogles, 570 F. Supp. 2d 1134, 1157-58 (D. Minn. 2008) (rejecting the defendant's argument that because Minnesota has not implemented SORNA, prosecuting him for violating its registration requirements is a violation of the due process clause).  As a result, it is irrelevant whether South Dakota has completely complied with the SORNA registry requirements.  Sex offenders residing within the jurisdiction of South Dakota must register with the state.

Likewise, courts have also determined that even if an Indian tribe fails to implement a sexual offender registry pursuant to SORNA, a sex offender still has an independent duty to register with the state. See United State v. Begay, 2009 WL 465026, at *2 (D. Ariz. Feb. 24, 2009) (noting that case law indicates that SORNA imposes an obligation on the defendant to register regardless of whether the Navajo Nation has complied with SORNA's requirements) and United States v. Watchman, 2009 WL 464995, at *2 (D. Ariz. Feb. 24, 2009) (same). Those courts reasoned that Congress has authority to implement federal criminal statutes of general applicability on tribal lands and that Congress intended SORNA to apply to tribal lands because SORNA violations can occur if a defendant enters, leaves, or resides in "Indian country." Id. at *2. SORNA requires sex offenders to register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." Id. at *3. These courts construed the phrase "each jurisdiction where the offender resides" broadly, finding that it requires a sex offender not only to register on the reservation but also to register with the state in which the reservation is located. These courts broadly interpreted the phrase because "[t]o read the statute more narrowly would mean that offenders residing on or moving to reservations that had opted into SORNA but had not yet created a registration system would have no obligation to register." Id. at *4. Such a result would be inconsistent with Congress's intent that "SORNA . . . reach all

7

sex offenders in all parts of the United States and to prevent even temporary loss of offenders from the registration rolls." Id. at *3. As such, these courts concluded that a sex offender is required to register both on the reservation and with the state.

The court finds that the above-mentioned cases are persuasive and that the magistrate judge's reliance on the reasoning of those cases was appropriate. Accordingly, the court finds that despite the fact that the Crow Creek Sioux Tribe has no sex offender registry program, SORNA as applied to Voice does not violate the due process clause.

**B.    Notification of SORNA Registration Requirements**

The magistrate judge found that because Voice previously complied with state requirements to register as a sex offender, he understood that responsibility and was able to fulfill that responsibility. The magistrate judge also noted that Voice acknowledged being notified in his July 7, 2008, registration form that he has a duty to advise law enforcement agencies of any change of address or relocation and that if he failed to do so he could be charged with a state offense. As a result, the magistrate judge concluded that Voice had at least constructive notice of his duty to register pursuant to SORNA and therefore SORNA as applied to him does not violate the Due Process Clause. The magistrate judge further noted that given Voice's knowledge of his existing state registration requirements, his failure to register

8

was the result of active, not "wholly passive," conduct.  Voice objects to these findings, contending that any notice that Voice received to register under South Dakota state law does not diminish his due process claim.  Voice contends that notice of South Dakota's requirements does not substitute for notice under SORNA, especially in light of the fact that the notice time-frame requirements, tiers, and penalties between the federal and state laws are different.  Voice also argues that the Crow Creek Sioux reservation has no sex offender registry and therefore he was not provided notice of any obligation to register when entering the reservation.

In May, the Eighth Circuit determined that the defendant's argument that he was not notified about the SORNA registration requirement was based upon his alleged ignorance of the law.  The court found that because the defendant knew he had an obligation to register and keep his registration current when moving between jurisdictions based upon previously enacted state laws, his due process rights were not violated.  In reaching this conclusion, the court also relied on the fact that the defendant had received information regarding his state registration obligations.  Id.

Here, Peggy Nickerson, the South Dakota sex offender compliance coordinator who maintains the sex offender registry, testified that Voice submitted a July 2008 state sex offender registration form.  She explained that Voice re-registered with the Sioux Falls Police Department and the Sioux Falls

9

Police Department subsequently sent the form to her office. She also clarified that the form only contained the state law requirements for registering as a sex offender and did not notify an individual of the registration requirements under SORNA. Docket 37 at 25-28. Further, the form signed by Voice indicates that he had been notified about his registration obligations and that he knew he had an obligation to register and keep his registration current, based upon South Dakota law.[1] Accordingly, based upon the reasoning employed in May, the court finds that SORNA does not violate Voice's due process rights even though he did not receive specific notice about his obligations to register or update his registration pursuant to SORNA.

Moreover, the magistrate judge recognized and the court agrees that an overwhelming majority of courts have determined that a defendant's knowledge of his or her obligation to register as a sex offender pursuant to state law is sufficient to satisfy the due process clause requirements in relation to SORNA. See, e.g, Hinckley, 550 F.3d at 938 (noting it agreed with "the majority of courts [that] have concluded that notice of a defendant's obligations under state law is sufficient to satisfy the Due Process Clause's requirements");

---

[1] More specifically, Voice's sex offender registration form advised Voice that he must register bi-annually with the appropriate law enforcement agency within South Dakota. The form also advised Voice that a change of address required in person written notification to proper law enforcement agencies within five days of relocation, including moves out of the state. Voice signed the form, indicating that he read the form and that he was aware that a violation of the registration laws was a Class 6 felony. Exhibit C.

United States v. Gould, 526 F. Supp. 2d 538, 544 (D. Md. 2007) (stating that a defendant's "prior knowledge of a duty to register under state law qualified as effective notice under SORNA"); United States v. Kent, 2007 WL 2746773, at *1 (S.D. Ala. Sept. 20, 2007) (determining that "the defendant had sufficient notice that failing to register was illegal, in that defendant was counseled on at least two occasions of his duty to renew his registration and to provide a change of address prior to moving"); and United States v. Mitchell, 2007 WL 2609784, at *2 (W.D. Ark. Sept. 6, 2007) (finding that because a defendant knew that he was under an obligation to register as a sex offender under state law, the defendant's lack of knowledge of the requirement to register as a sex offender under SORNA was unconvincing). As noted above, Voice had knowledge of his obligation to register as a sex offender under South Dakota law, which is demonstrated by his July 2008 state sex offender registration form. Therefore, because Voice knew the registration requirements South Dakota imposes on sex offenders, he is deemed to have sufficient notice regarding the registration requirements of SORNA.

### C. Ambiguity of SORNA

The magistrate judge determined that the notification and verification provisions contained in SORNA are not ambiguous. The magistrate judge noted that Voice was advised that he was required to re-register and that he was to provide written notification of any change of address and relocation

11

within five days of moving.  Although the magistrate judge acknowledged that South Dakota requirements are not in complete accord with SORNA's requirements, he found that the advisements were unequivocal and left no room for confusion.  Voice objects to these findings, arguing that SORNA is ambiguous in informing a person when he is required to appear in person and inform a jurisdiction of all changes required for the sex offender registry.  Voice further points out that this issue is further confused when the individual is only made aware of having to register bi-annually under South Dakota law.

As the magistrate judge recognized, the provisions of SORNA that Voice argues are ambiguous apply to different situations and therefore, even though they may contain some inconsistencies, such inconsistencies do not make SORNA ambiguous.  SORNA requires a sex offender to keep his registration current.  Specifically, SORNA provides that

> [a] sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

42 U.S.C. § 16913(c).  It further provides the jurisdiction that is notified "shall immediately provide that information to all other jurisdictions in which the offender is required to register."  Id.  This provision of SORNA advises the sex offender about the steps he needs to take to update his registration when he changes his name, residence, employment, or student status.  That is, a sex

12

offender must appear in person in one jurisdiction involved with the change of his name, residence, employment, or student status within three days after completing such change. Accordingly, this provision of SORNA only applies if a sex offender changes his name, residence, employment, or student status.

SORNA also requires a sex offender to periodically appear in person for verification purposes. In this regard, SORNA states that

> [a] sex offender shall appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered not less frequently than - -
> (1) each year, if the offender is a tier I sex offender;
> (2) every 6 months, if the offender is a tier II sex offender; and
> (3) every 3 months, if the offender is a tier III sex offender.

42 U.S.C. § 16916. This provision of SORNA requires the sex offender to periodically appear in person to verify information, irrespective of whether he has changed his name, residence, employment, or student status. Therefore, unlike 42 U.S.C. § 16913(c), this provision applies to the sex offender all of the time, not just when the sex offender changes his name, residence, employment, or student status.

In sum, SORNA instructs a sex offender that if he changes his name, residence, employment, or student status, he must appear in one jurisdiction involved to notify the jurisdiction of these changes within three business days of the changes. SORNA further instructs a sex offender that even if he does not change his name, residence, employment, or student status, he must appear in

13

the jurisdiction in which he lives to verify information either each year, every six months, or every three months, depending on his sex offender classification. As a result, these two SORNA provisions apply in different situations and do not make SORNA ambiguous.

Moreover, the fact that the South Dakota requirements are inconsistent with the SORNA requirements does not make SORNA ambiguous. When interpreting a statute, a court is to consider "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). If so, the court applies the plain language of the statute. See Doe v. Dept. of Veterans Affairs, 519 F.3d 456, 461 (8th Cir. 2008). A court is to look beyond the statute's text only if it is ambiguous. See Staples v. United States, 511 U.S. 600, 605, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994). Here, as discussed above, the plain language of SORNA is not ambiguous. As such, the court is not to consider South Dakota law when determining whether SORNA is ambiguous. Accordingly, the court finds that the fact that South Dakota requirements may be inconsistent with SORNA requirements does not make SORNA ambiguous.

### III. Non-Delegation Doctrine

The magistrate judge found that Voice lacks standing to argue that Congress violated the non-delegation doctrine by authorizing the Attorney General to determine SORNA's retroactivity. The magistrate judge further found that even if Voice did have standing to make such an argument, his argument would fail because every court that has considered this particular issue has held that this delegation of authority was not unlawful. Voice objects to these findings, arguing that Congress failed to articulate any policy to guide the Attorney General on the retroactivity of SORNA. Voice asserts that Congress gave the Attorney General the sole discretion to determine who should be subject to SORNA and that by doing so, Congress violated the non-delegation doctrine. Voice contends that if Congress intends any law to have retroactive effect, it must comply with the Constitution rather than explicitly handing a legislative function to an official in the executive branch.

The Eighth Circuit has determined that if a defendant was a person able to register before SORNA's enactment, thereby making SORNA's authorization of the Attorney General to promulgate rules inapplicable to him, that defendant did not have standing to challenge SORNA based upon the non-delegation doctrine. May, 535 F.3d at 920-21. Here, Voice was convicted of two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1), in the United States District Court for the District of South Dakota, on November 12, 1998.

15

Voice registered as a sex offender with the state of South Dakota and was required to register biannually—in January and July. These facts indicate that Voice was able to register before SORNA's enactment. Thus, the court finds that Voice lacks standing to raise the question of the delegation of authority to the Attorney General.[2]

IV. **Commerce Clause**

The magistrate judge determined that SORNA, as applied to Voice, did not violate the Commerce Clause of the United States Constitution. The magistrate judge explained that Voice's claim is foreclosed by Eighth Circuit precedent. The magistrate judge further reasoned that because Voice was previously convicted of a federal sex offense in Indian country and traveled from Sioux Falls to the Crow Creek Sioux reservation, he has an interstate nexus which brings him within the scope of SORNA. Voice objects to these findings, arguing that the Eighth Circuit precedent with regard to SORNA and the Commerce Clause is distinguishable from this case. Voice also contends that his alleged illegal activity occurred only within the state of South Dakota and therefore Voice did not travel in interstate commerce.

---

[2] The court finds that it need not address whether Congress violated the non-delegation doctrine in the event Voice did in fact have standing. Based on Eighth Circuit precedent, which is binding on this court, the court finds that Voice has no standing to make such an argument. Accordingly, the court does not adopt the magistrate judge's report and recommendation in relation to its finding that if Voice had standing, his non-delegation argument is without merit because it is unnecessary to resolve this issue at this point in time.

The Eighth Circuit has determined that SORNA does not violate the commerce clause of the United States Constitution. See United States v. Howell, 552 F.3d 709, 713-17 (8th Cir. 2009) and May, 535 F.3d at 921-22. Admittedly, these cases involve factual scenarios in which the defendants traveled from one state to another state. See id. Here, Voice did not leave the state of South Dakota, but he did enter the Crow Creek Sioux Reservation. As such, those cases are instructive but not necessarily binding in relation to the particular issue that is presently before the court. Nevertheless, the court agrees with the magistrate judge's conclusion that SORNA does not violate the Commerce Clause.

The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Congress's power under the Commerce Clause includes the power to regulate (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). Under 18 U.S.C. § 2250(a), SORNA only applies to sex offenders who were convicted of a federal sex offense or who travel in interstate or foreign commerce or enter, leave, or reside in Indian country. Therefore, an individual who commits a state sex offense and

17

does not leave the state of South Dakota is not subject to the registration requirements of SORNA. Significantly, Congress set out two jurisdictional prerequisites, one of which must be satisfied, in order for SORNA to apply and such prerequisites are consistent with the Commerce Clause. These prerequisites—the commission of a federal sex offense or the traveling to a different state, a foreign country, or Indian country—have a significant enough connection with interstate commerce to bring SORNA within the purview of the Commerce Clause. Thus, SORNA does not violate the Commerce Clause.

For the reasons discussed, Voice's objections are overruled and the magistrate judge's Report and Recommendation is adopted. Accordingly, it is hereby

ORDERED that the magistrate judge's Report and Recommendation (Docket 35) is adopted as supplemented herein.

IT IS FURTHER ORDERED that the defendant's objections to the Report and Recommendation (Docket 42) are denied.

IT IS FURTHER ORDERED that the defendant's motion to dismiss (Docket 15) is denied.

Dated April 17, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE